Good morning. First case of the morning is Case 119553, Ronald Baer v. Panduit Corp., Area Erectors. Are you ready to proceed? Yes. May it please the Court? Counsel. My name is Tom Kelleher, and I have the privilege to represent plaintiff appellant Ronald Baer in this matter. The issue before this Court... What about Area Erectors? Do you represent Area Erectors? No, I represent plaintiff Ronald Baer. Okay. The issue in this matter before the Court is whether the third-party defendant, Area Erectors, owes an attorney fee, a mandatory contribution attorney fee, for the savings that it is benefiting from by being relieved of paying for future medical expenses pursuant to the Workers' Compensation Act and as a result of the verdict and settlement in this case. Just as a brief background, Ronald Baer was an iron worker injured on a construction job. Unfortunately, severe injury resulted in quadriplegia. We brought a construction injury case. We tried that case, received, obtained a verdict of $64 million. Post-trial, we settled with the parties involved. After settling that matter, we satisfied the workers' compensation lien in terms of what benefits had already been paid by the workers' compensation insurer. We moved for attorney fees with respect to the future savings in terms of what the employer area was going to save by being relieved of paying future lost wages in the form of permanent total disability payments as well as savings from being relieved of paying future medical expenses. The trial court granted our motion, awarded those fees. On appeal, as the court knows, Area Erector does not challenge the attorney fees with respect to its savings for future losses but challenges the fees with respect to medical expenses. That's the issue before this court. And this is an issue of statutory interpretation. Is that correct? Excuse me, Judge? This is an issue of statutory interpretation. Yes, Judge. Justice, I'm sorry. And that's where I was going. I mean, I think we really just need to look at the terms of Section B, which is the applicable statute here. The first two paragraphs of Section B are the ones that are in play here. I think it's important that they be read together, obviously, as part of the statutory scheme. And there are two separate paragraphs in this Section B. But at the same time, they cover separate topics or aspects of the Section B lien. The first paragraph talks about when there is a third-party recovery, what the employer is entitled to reimbursement for. And there are essentially four categories of reimbursement. The employer is entitled to reimbursement for what it has already paid to the employee and what it will have to be paid in the future. And again, because we're talking about payments to the employee in large part, we're talking about the lost wages, lost income. Counsel, though, if future medicals were included in that settlement, haven't the attorney fees already been paid on that? Because the settlement did include future payments. Correct. The verdict included future medicals. Yes. And were attorney fees paid on that settlement? There were attorney fees paid upon that settlement. But it's our position that Section B requires a mandatory contribution for that entire attorney fee. We're not asking for an additional attorney fee. Essentially, the way I think the cases come out in terms of at least when you consider Zuber v. Illinois Power and the Enright-Dierks case, it becomes clear that there is a mandatory contribution to that. In this case, it was a one-third attorney fee. There's a mandatory contribution by the area rectors, the employer. So there's going to be sort of a prorated division between the plaintiff, the injured party, and the employer or the worker for compensation insurer in terms of how that fee is split up. And that's really all we're asking for here. So no new money, just split up what's there in the settlement as it exists. True. And I'll give you a practical example. The example is what's going on with the lost wages. Right now, as I said, area rector is not challenging the lost wages, the attorney's fees on that. That's not an additional fee. Those attorney fees are being paid by area rectors on a quarterly basis. They're paid to our firm, and we turn them over directly to the client. And I think if you look at the trial court's order, it explains that. Although we specifically requested that these attorney fees before the trial court be paid directly to Ronald Bair for whatever reason, the court did not want to do that, but instead specifically ordered that there would be no duplicative attorney fee and that these attorney fees by area rectors for these future benefits that it was being relieved of were to specifically, and it's in the language of the order, to assist the plaintiff in paying his one-third attorney fee to Horwitz Horwitz & Associates pursuant to the Dierks case. And I think the Dierks case is clear. I mean, now the facts of Dierks are different than the facts that we have here, but the language that this court and the rationale that this court put forward is pretty clear, that Section B does not represent a second or additional fee. It represents a sharing obligation of the fee between the employer and the plaintiff. It described that fee as a mandatory obligation, a mandatory contribution to the fee, and it also made clear that Section 5B, in requiring that, in part the intent or purpose is to avoid a windfall or an unjust enrichment by the employer, in other words, of being relieved of, in this case, payment of significant medical expenses without taking on its share of that one-third contingent fee. Is it your position that the plain language of B supports your position, or is the statute ambiguous? No, I think the plain language of Section B does bear that out. And, again, I think you need to consider the two separate paragraphs. As I said, the first paragraph of Section B lays out what the reimbursements are, what's paid to the employee, what's to be paid to the employee in the future, what's paid pursuant to Section 8A of the statute, which is the payment of medical expenses. Now, typically, those are paid directly to the medical provider, but that's still a reimbursement under that first paragraph. So medical expenses paid and medical expenses to be paid. That first paragraph captures the reimbursements for the employer. Then you move on to the second paragraph. In the second paragraph, there's no limitation on the reimbursement. It's the 25 percent fee provision. And it says, out of any reimbursement received by the employer pursuant to this section, it goes on to say that there's going to be a sharing requirement. And it also says that based upon, and the language is any reimbursement, and for such any reimbursement, there's going to be assessed a 25 percent attorney fee. And the language in that second paragraph is mandatory, and there's no limitation on the reimbursement. It refers to it as any reimbursement. So you have to look at the first paragraph, which we've already discussed, or I've talked about, the four different aspects of the reimbursement. I'd like Mr. Kaplitz to address this, too, when he gets up here. Mr. Kelleher, there's a dispute with respect to double recovery. You want to state your position on that, whether or not this would amount to a double recovery? Sure, Judge. Again, I do not believe there's any indication in the record that there's a double recovery here. I mean, again, I go back before the trial court. As plaintiff's counsel, we were going to receive our one-third fee out of the settlement. We specifically requested the trial court to make these payments of future attorney fees directly to the plaintiff, Ronald Bear. The court decided not to do that. But instead, they specifically ordered that there would be no duplicative fee. And they ordered, again, that these additional attorney's fees that were coming from the employer in the future were going to be used to assist in the payment of the one-third fee that the plaintiff had to take on, original and initial. And as a practical matter, this is already moving forward and taking place with the lost wages fee. So any overlapping fees, then, would go back to Bear? Is that right? True. True. And, again, I think you have to consider Zuber, but probably more in particular Dirks, when it talks about this is a mandatory contribution fee. It goes to relieve, really, the plaintiff in these cases of taking on more of his or her share than is necessary. In other words, for every benefit and reimbursement that is being paid or that is being received by the employer, then they have to pay their share. In this sense, pay their share of the expenses and costs associated with that, as well as pay their 25% fee. And I think in terms of when you look at the appellate court decision, the problem that we had in that decision is that it seems like the appellate court was making connections or ties between the first paragraph of Section B and the second paragraph of Section B. Basically, their interpretation was that the 25% fee provision in the second paragraph only applied to reimbursements for monies that were paid to the employee, but not for reimbursements that were paid to medical providers for medical expenses. But if you read those two paragraphs, there's no such language in there. There's no such linking of that language. I mean, again, the second paragraph, the 25% fee provision, talks about any reimbursement. So it has to refer to all of the reimbursements in that first paragraph, which include lost wages and medical expenses. Now, and I think, you know, Aria argues in part that, you know, the issue really is one of what the legislature has done. If you have an argument here, it's really with the legislature. And to a certain extent, I agree. But that's Aria's argument. If they, the position that they're putting forth now is not what is stated in Section B, in the first paragraph and the second paragraph. Now, it would be different if the legislature wrote a statute that said in the second paragraph, out of any reimbursement paid to the employee, then there's going to be a 25% fee provision. But that's not what the legislature did. And I think you have to look at sort of the plain language of that statute. And when you do that, I think the fair and really only reading is the one that we've been put forth today by Plano. I think the other issue is that you need to consider even what this court has said when it's commented on the intent and purpose of Section 5B. In Zuber, the court stated, now I understand that Zuber did not involve specifically medical expenses, but the Zuber court did discuss Section 5B, the purpose of Section 5B. And it specifically said, Section 5B notes that there's going to be a benefit by the employer, not only from being paid back what it has already paid, but also a benefit of being relieved of future payments. The court went on to say, because of that purpose and because of that fact, it is appropriate to impose attorney fees on the employer for both benefits. I think the, and they go on to say that that really, at least in part, is the purpose and intent of Section 5B. But Dierks Court also went on to discuss the intent and the purpose of Section 5B. It said, pursuant to Section 5B, there shall be essentially a litigation fund or reimbursement fund that's going to benefit the employer, in this case, Aria. Because of that fund, the court talked about there's a mandatory, pursuant to Section 5B, a mandatory contribution that's required to the attorney fee. And I think as a practical matter, you know, again, that's, you know, what I think Section 5B says in plain language. But I think as a practical matter, in terms of how Section 5B is implemented, there's sort of a line of cases that this court has put forth. And I think if you consider the Freer case, the Zuber case, and the Dierks case together, it creates a practical model by which these attorney fees can be paid. Under those cases, you have a settlement, the workers' compensation benefits will stop, be suspended, and there's going to be future savings to the employer by the settlement or verdict in the third-party case of being relieved of paying future lost wages and future medical expenses. And there's going to be attorney fees that are assessed. And under Zuber, which was appropriate, as those payments came due, the employer would be relieved of those payments. And at that point in time, the savings would occur. As a result of the savings occurring, that would be the point in time where these attorney fees would be assessed. For example, in Zuber, there was a $224 a week payment for lost wages moving forward that the employer was being relieved of. On a weekly basis, the employer had to pay its 25% fee. That's what's happening right now with the lost wages. And under the language of the statute, Section 5B, as well as the case law here, that's what needs to be done with respect to the saved medical expenses as well. Thank you. I have one question. Oh, sure. In the opening part of the dependents' brief, they acknowledge that 8B is involved, but then they also refer to Section 8A sub D with regard to undisputed medical payments. How does that factor in at all? Well, I don't think it does factor in. Now, again, I think that was specific. That was an argument that area put forth, and that, in part, was an argument that was accepted by the appellate court because, again, they made a distinction between reimbursements or money that the workers' compensation insurer paid to the employer as opposed to being paid to the medical provider. But as I've said, nobody here in this courtroom, none of the parties, no court, the appellate court, the circuit court, everybody agrees that that first paragraph of Section 5B requires reimbursement for lost wages paid, past lost wages that are to be paid, medical expenses paid in the past, even though they were paid to the medical providers, and medical expenses that have to be paid in the future, again, to the medical provider. That first paragraph of Section 5B, that encompasses the world of that and reimbursement. You go to the second paragraph. It refers to any reimbursement. Any reimbursement is going to be charged a 25% attorney fee to the employer. And so I think that argument is sort of a red herring, if you will. What the defendant has specifically highlighted is language that says, in 8A, if the employer does not dispute payment of first aid, medical, et cetera, the employer shall make payment to the provider on behalf of the employee. And then Sub D says no attorney fee shall be charged with respect to compensation for undisputed medical expenses. Again, does that factor into an interpretation of 8B in any way? I don't think so because I think that second provision that you read is similar to their argument about 16A, Section 16A, where they're saying, well, there really should be no attorney fee charged because these medical expenses, medical bill payments were undisputed. But just like that provision in Section 8, Section 16A, it's not talking about, in the case of, it's not talking about that issue in the framework of a Section 5B lien where there's been a recovery. It's talking about the workers' compensation attorney in that initial workers' compensation petition cannot take a fee on undisputed medical expenses. That's a completely different issue than what we have here. And what we have here is where Section 5B applies, where you have a plaintiff and his counsel take on huge amounts of risk, expenses well over $100,000 to try a hotly contested case, come up with a verdict that substantially benefits not only the plaintiff but the employer, and there's a mandatory 25% attorney fee on that recovery, on that contribution to the employer's benefits. Thank you, Counsel. Good morning, Justices. My name is Kevin Kaplis. I am General Counsel for Area Erectors. Thank you for your time here today. Mr. Kaplan, quick question. You, according to Area Erectors, because there is no language in the Act expressly stating that attorney's fees ought to be paid for suspended future medical payments, the employer is not obligated to pay the 25% attorney's fees. The factor then further argues that the buyer's position, the payer's position is incorrect because the 25% attorney fee charge must be paid to the plaintiff's attorney who has already received the one-third fee for the services rendered to the third-party action in the third-party action. And as support for the final aspects of its argument, area relies on, in my opinion, the state of Derricks and claims that on page 32 of your brief that Derricks, quote, Derricks clearly states that no such fee could be paid to the employee of the employee's or the employee's representative. Now, there's no pinpoint citation to that quote. Do you locate it for me? No, I can't, Your Honor. I'm sorry. That was a misquote. It should have been on another case in regards to that. But the bottom line is on Durkee's is that there was a contingent fee, and they tried to do a third attorney's fee, a contingency fee, and they ordered it, but you couldn't get two attorney's fees. They tried to do a 25 percent and a 33 and a third percent, and therefore they said you cannot have two attorney's fees in regards to it. You can't have a double recovery of attorney's fees. And the act controlled and not the contract. In my view, in the court's view, in Derrick's, I thought we simply held that the plaintiff's attorney who is successful in a third-party action is entitled to a single fee, a portion of which is paid by the plaintiff's client and a portion of which is paid by the employer who benefits from the third-party action. I do not find anything in Derrick's that explicitly or implicitly holding that the employer's contribution to plaintiff's attorney must be paid to the attorney and cannot be paid to the plaintiff. Since Derrick's held that the employer's portion constitutes a contribution to the attorney's fee, I believe it could be paid to the plaintiff if the attorney has already received the one-third contingency from his client. Now, if that is the correct interpretation and the majority would decide that of Derrick's, would we have to overrule the estate of Derrick's? No, you would not, because in Derrick's they tried to get two attorney's fees. But my position is here is fairly simple. It's a fairly narrow issue we're dealing with here. Does the Act in and of itself expressly state that the 25 percent attorney's fees apply to suspended medical? In my position, it does not. This statute is in derogation of the common law. If you're in derogation of the common law, you have to expressly state what it is. If you remember, historically the American rule is there's no attorney's fees. Every party shares their own. In 1957, they amended the Act to state the 25 percent attorney's fees. But this court in Hardwick v. Musterman in 1959 acknowledged the fact that the changing of the statute was a clear indication that without the specific statutory enactment, no such liability would exist against the employer in actions by an employee against a third person. So therefore, it has to be in the Act to allow. And since it's in derogation of the common law, the meaning of the statute and the extent to which it changes the common law will not be extended beyond that which the language of the statute absolutely requires in its expressed terms or by necessary implication. And that was decided by the Supreme Court in Ray W. W., which was decided in 1983 by the court. So what we're dealing with here is that the statute has to be literally reviewed and decide this court's decision as to whether it applies to suspended medical. There's no doubt in the statute. There's no provision expressly stating that these apply to suspended medical. What we're dealing with here is you have to look exactly at the language of the statute. It's a fundamental principle that these statutes, you have to read every word in them, and there's no superfluous words and no unnecessary words. And if you recall the court in this court in Grohl v. Adrian, which dealt with the Wrongful Death Act, this court stated that since the Wrongful Death Act did not have medical recovery provisions in it, that medical bills were not recoverable under the Wrongful Death Act because it's not expressly stated in there. Similarly, in this case, there is no such provision expressly stated. In fact, counsel in page 1210 of his initial brief before this court added in the words under 5B, including medical bills, which I noted in my brief, is not actually in the quote that he had. It's not there. If he has to add words to it to explain it to the court, I think that adding words to it is what exactly this court would be doing. This is not a common funds doctrine case where you're trying to collect under like Bayer v. State Farm. This is a statutory requirement. And as I cited previously, without the provision, this court cannot grant 25 percent attorney's fees. Can you just tell me on one small piece? Sure. My question is somewhat about against what is the 25 percent assessed. Section 8A of the Act defines compensation as the employer shall provide medical bills, et cetera, and all necessary bills thereafter incurred. So Section 8A seems to define compensation as including future medical bills. Is that right? I agree. Okay. So doesn't that suggest that when we're talking about how this is to be divided, that it's going to be applied against the compensation as defined as future medical bills? We're not reimbursing. We're suspending. Under Freer, you suspend. And therefore, you're not reimbursing because we're never going to pay it. And we've been paying undisputed medical all the way along in this case, from day one of the accident, back in 2008, I believe, June 20 of 2008. What we're dealing with is the fact that there's no provision in this Act that allows the payment of attorney's fees to a plaintiff. So the key word that you're concerned about is reimbursement versus compensation. Correct. I will agree that they both are compensation. There's plenty of case law saying that they are. The key is the reimbursement of it. And you have to understand there's a – No, no, no. Let me get it. I'm sorry. Go ahead. I'm just trying to figure out the statute. The statute says compensation means future medical benefits. And then later, the other statute talks about 25% being against the gross amount of such reimbursement. Now, you're saying reimbursement is distinct from compensation. In regards to suspended medical. Why? Because it's not reimbursing it. It's already been paid. This gentleman here, Mr. Pierre, has already received a settlement of over $46 million in this matter. His medical and future progressive medical is, in fact, paid. And you have to also answer the question, how would you administer this? I can understand under Zuber, although I do agree – I do think the court stretched it in Zuber because the paid or to be paid could have simply been responded to instead of all the future was quite often in workers' comp, when you settle a case, you'll say, okay, unpaid medical for 30 days or 60 days will include in the settlement. And if you do that, it's paid or unpaid as included in it. They stressed it to all the suspended TTD. But in this case here, we had a settlement. And I don't know if you looked at the settlement in the appellate court opinion. They went into it at length. But it was rather convoluted. Even I admit that. But that's what happens sometimes when you're dealing with litigation such as this. And part of it was that we could not agree on the suspended medical and TTD attorney's fees. So part of the release was that if all parties settled, that plaintiff would waive all attorney's fees. And we couldn't agree, Mr. Horwitz and I couldn't agree on whether it was TTD and medical or both. And as part of the settlement, we agreed, well, the law is pretty clear on TTD. We'll pay the TTD, but we're not going to pay you the suspended medical, if in fact. But the case didn't settle. That went by the wayside. It was an agreement we had, but it didn't go to fruition. But we agreed on the Zuber part of it in regards to TTD. And I might add, TTT is easy for you to administer. Either the industrial commission or the parties will agree it's $1,000 a week, 25%, $250 a week, easy to do. Medical, how do you do it? Medical calls for, therefore, an ongoing administration by some judge somewhere. Because you're going to have constant disputes. In this case here, we have bills being provided on a monthly basis for medical that they've been sending to me. In it, it has management, which this court in Colbert said you can't charge for management fees for workers' comp. So that's something that's in dispute. If you remand this matter, some judge has to decide that. They're ironically putting in as medical workers' compensation insurance because the plaintiff himself is now an employer. And therefore, through MEDEVAS, they have to hire and pay $802 a month in workers' compensation. There's also Illinois Medicare Part B that's coming in. There's SSD coming in. There's a lot of little nuances that you're going to have on a monthly basis, if not weekly basis, a continuing administrative nightmare which distinguishes TTD from suspended medical. It's not specifically stated in the act. Now, it's up to this court to decide, you know, you're the justices, you make the decision. But it's not in the act. And I think that it does not apply to this kind of a situation. What we're dealing with here is under the Rules of Professional Conduct, an attorney cannot share an attorney's fee with anybody who's not an attorney. Nothing saying that he's allowed to give money back to his client or not give money back or reimburse. In fact, in this case here, I challenged in both the appellate brief and the brief before this court to tell me what you've been doing with the TTD money, supplement the record, show the court that you've been paying back the 25 percent to Mr. Baer. That challenge was ignored. There's no evidence before this court as to what's going on with that money. The only evidence is we made a gentleman's agreement. We wouldn't be doing it on a weekly basis. We'd be doing it quarterly, which we've been honoring and sending the checks in quarterly. Is that your position, Mr. Campos, as to why this would be an overpayment? It is. And this is an incredible overpayment already on this case. Mr. Baer ended up with $46 million. My client, Area Rectors, and I'm their general counsel, I'm not their insurance counsel or anything else, paid a half-a-million-dollar deductible on both sides of this, on the workers' comp and the CGL, commercial general liability policy. Then it paid money on its excess policy of $25 million on behalf of Panduit as an additional insurer. So in this case, we've paid almost $28 million on this. Now the court is asking us to pay for suspended medical at the plaintiff got from the jury. It's not like he hasn't been paid it already, that they can take the attorney's fee out of it. They've already taken their attorney's fee, and they're asking this court for an additional amount of money. Now, I have gray hair. I've been around a long time. I've had a lot of cases over 43 years. You might add, why hasn't this come before this court before? Because I've never had a lawyer really go that far after getting a $16 million attorney's fee and his client being fully compensated on the matter, actually proceed on. Generally, you make it as part of the settlement. And I'm a, you know, you don't see me here. I do an awful lot of settlements for an awful lot of years. But this case here, they want a double recovery. It's not in the statute. There's nothing in the statute saying. Let me stick with that point for a minute. Go ahead. Mr. Kelleher then is indicating that Bayer owes, what, 33%. To the extent that that was paid, the 25% that area would pay would then serve as a reimbursement, right, to Bayer. That's their position, yes. There's nothing in the statute allowing them to do that. Our rules of professional conduct, I think, might bar it. But in any event, they haven't proved in any way, shape, or form they've done it in regards to the TTD. So, you know, I don't believe in the Easter Bunny either anymore. So I don't know if that's ever going to occur in this case here. And you might, if you remand it, have a court supervise it. But, again, you're asking for nightmares in regards to supervision of this case. I can just see this as I'll be dead in this case. We'll still be lingering on. It's just one of those matters that goes on forever. I gave as an example, what if under the Act, the employer, if they don't file a suit within 90 days before, three months really, before the statute's going to run, the employer has a right under the Act to file the lawsuit. Okay, what if I file the lawsuit and I got a $64 million verdict? A net, it was 80 minus 20% contributory, 64 net. And they had an attorney, as a consulting attorney, overlooking my shoulder. I would then have tried the case, put up all the expenses, put up all the time, got the $64 million, taking my lien money back out of it. In this case, we had a $6 million lien. I wouldn't have negotiated it down to 3.75. I would have taken my three quarters minus the pro rata cost. But then in turn, I would then have to pay for 25% attorney's fees for a suspended medical that I recovered. That provision of the Act makes no sense at all if you're going to allow for suspended medical to be attorney's fees. You know, as I stated, it's a double recovery. In all these other cases cited, the party had not yet received the money. They'd appealed it. Or in the one case where they received the money, they said, well, you can't get a second fee. You've already recovered that. There's no specific case, and the appellate court pointed out, there was no case directly on point in the state of Illinois. In Zuber, you have to remember that it was $900 per month, a Whittles Award, and the attorney had not taken the fee on that annuity that was purchased. And that's the difference. In Zuber, there was no attorney's fee taken in any way, shape, or form on the TTD that was being paid. So the court said there's no double recovery a lot happening here, so therefore he could get an attorney's fee. And again, Zuber dealt with wrongful death, which has no medical in it, so it can't be stare decisis in regards to suspension of medical bills. In regards to the double recovery argument, we have the double recovery argument, Judge Thomas, you asked about earlier, and the Taylor v. Pekin, which I cited, the Supreme Court said it had to be payable to the attorney, not to the plaintiff, because the underlying court had stated that they could pay it directly to the plaintiff. And the court said, no, you can't. It has to go to the attorney. In this case here, what if the money really doesn't go back to the plaintiff? Isn't there really a double recovery absolutely in this case? There's no question about it then. But there's nothing in there allowing him to have it. So you're going to have to rely on the good graces of the attorneys or administrative court that the money goes back. And I have to remind you that under the Act, these are weekly payments. We've agreed as a gentleman on the TTD to every three months, because the TTD is a small amount and it's easily calculated, and we decided not to have so many checks. In regards to there was a brief also filed by ITLA on this, which I think didn't add anything to it other than the fact that ITLA is interested in this matter. It really twisted the court's opinion. And this counsel tried to claim, too, that under the Act, my interpretation he claims to be in the appellate court's interpretation, which is wrong in regards to his interpretation of the appellate court, that somehow this opinion says that we can't get reimbursement for medical bills. And that's not there, because the word including is in Section 5B, which includes that amount received by the employee and also including the 8A provisions of the Act. So with that, I thank you for your time unless you have further questions. Thank you. Thank you. Mr. Keller, tell me what that looks like. The weekly future medicals, 33% already been paid an attorney's fee, presumably that 25% contribution going back to the plan. What does that look like in terms of will it take judicial monitoring? If not, is it a lawyer paying a fee to a non-lawyer? Is there professional conduct implications? I do not believe there's any professional conduct implications. As the law exists now, under Section 5B, there's a mandatory contribution by the employer for these issues that we've talked about. There's certainly nothing in the law at all that prevents that contribution attorney fee, either one, going directly to the plaintiff pursuant to the Dirk's decision, or two, going to the plaintiff's attorney and the plaintiff's attorney turning around and basically it's semantics how you want to describe it. Paying that money directly to the plaintiff or taking that in as a contribution and basically granting the plaintiff a reduction or a discount or a refund in terms of what the plaintiff has already provided with respect to the one-third fee. Mr. Kavish points out that at least he doesn't have any knowledge that that was done with respect to the TTD payments. Well, you know, Area Rectors did raise that in its briefs. Our position is that the record is what the record is. I don't believe there's any burden or requirement that we put forth that evidence. And I think if you look at our conduct before the trial court, again, you look back to what our specific request was that these fees be paid directly to the plaintiff. The trial court did not order that, but instead, again, ordered that there was going to be no duplication of fees. These attorney fees were only to be used to assist in the payment of the one-third fee pursuant to Dirk's. Now, there's nothing in the record to indicate that we're not complying with Dirk's or we're not complying with the trial court order. I mean, quite frankly, I think we have an ethical obligation to do so. That's what we've done. Again, there's no indication that anything else is going on here other than speculation in the briefs by defendant area, who's got a legitimate interest here in either, you know, retaining this windfall or retaining this unjust enrichment. Is there an issue here, though, with regard to the amount of monitoring it would take from a court because of the fact that these medical expenses are unlike TDD and that you know indefinitely what that amount is going to be? But the medical is a different breed of cat. Sure, and I understand that. I mean, I guess my one thought would be this was an issue that was never raised at any level, not in the briefs, so it's a little difficult for me to speak to it. But, you know, on the cuffs, I can say that there is, under Section 5B, there's a mandatory contribution requirement for the attorney fee. I acknowledge that there may be a difference in how that is processed compared to temporary or total disability payments, but at least on the record here, there's no indication that it, in fact, is going to require monitoring. You know, in large part, we have been able to work out a lot of these issues with counsel. And if, in fact, there is an issue that pops up with respect to administration, then so be it. You know, there's no evidence in here that it's going to require frequent administration or we're going to be going back and forth from court or the commission. And, in fact, the workers' compensation case is still open. So, I mean, there's, you know, whatever issue is raised in that respect, I guess, could be raised in the framework of the workers' compensation case. But there's certainly no evidence that this is going to be an issue to the extent to basically ignore the plain dictates of Section 5B. And I think, again, if down the road it becomes an issue, that doesn't mean that we can rewrite what Section 5B has or what the legislature has already written in there. If it becomes an issue down the road, again, I think that's something that needs to be addressed with the legislature. And with respect to that language in Section 5B, I mean, in large part, Area Rector says, well, there's no specific language talking about, you know, future medicals being suspended and there being a requirement that the attorney fee be based on that. It's true. I mean, if you look at Section 5B, it does not specifically say the words medical expenses suspended. But I've already gone through it. The first paragraph defines, again, what the reimbursements are. The second paragraph specifically says a 25% fee on any reimbursement. You consider those together and it becomes clear that medical expenses are included here. And under that argument, I mean, there's no specific language in Section 5B that specifically talks about lost wages or disability payments, whether paid in the past or to be paid in the future. Under their argument, basically there'd be no 25% fee provision applicable at all, because there's nothing in the statute that talks about specifically medical expenses or specifically disability payments or suspended disability payments or suspended medical bill payments. That argument just doesn't make sense. Again, Section B is clear. It lays out what the reimbursements are, and then it defines what any reimbursement or that any reimbursement requires mandating a 25% attorney contribution fee. Mr. Kelleher, Mr. Kapp has provided a theory as to why we haven't seen this issue before. Do you have an alternative theory? Sure. My alternative theory is, and I can't read areas of counsel's mind, but this is a significant verdict. So there's significant money at stake. Our firm has been collecting Zuber fees as contribution to the one-third fee for years, and this never has been an issue. I mean, this is quite frankly the first time it's ever been contested by a defense counsel. This is routinely done in all of our cases, in all of our construction injury cases. There's always a contribution for future lost wages that the employer is being relieved of and future medical expenses that the employer is being relieved of. One of the most significant verdicts in Illinois history comes down, and this is when we see the challenge. That's my theory. Thank you. Thank you. Case number 119553, Ronald Baer v. Pandewitt Corporation, Area Rectors of Zappalee, will be taken under advisement as agenda number three. Mr. Kelleher, Mr. Kapp, let's thank you for your very insightful arguments this morning. You're excused at this time.